# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| FREDA I. TALLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05-00039 |
| ) | Judge Nixon |
| JO ANNE B. BARNHART, ) | Magistrate Judge Bryant |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 12). Defendant ("Defendant" or "Commissioner") has filed a Response in Opposition to Plaintiff's Motion, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. (Doc. No. 19). Magistrate Judge Bryant ("Magistrate Judge")[2] has issued a Report and Recommendation ("Report") that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No 24). Plaintiff timely filed Objections to the Magistrate Judge's Report and Recommendation ("Objections"). (Doc. No. 27). Upon review of the Magistrate Judge's Report and for the

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in the above-captioned case, and no further action is necessary to continue this case.

[2] Magistrate Judge Bryant replaced Magistrate Judge Brown on this case by order of this Court on August 7, 2006. (Doc. No 23). For purposes of this order, "Magistrate Judge" refers to Magistrate Judge Bryant. Magistrate Judge Brown, as well as Magistrate Judge Knowles, who worked on this case in an earlier posture, are referenced in this order by name.

reasons stated below, the Court **REJECTS** in part the conclusions of the Magistrate Judge's Report, **GRANTS** Plaintiff's Motion for Judgment on the Administrative Record, and **REMANDS** for further proceedings consistent with this opinion.

I.   **BACKGROUND**

   A.   **Procedural Background**

Plaintiff filed her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")[3] on June 23, 1998, alleging that she had been disabled since December 31, 1996. (Administrative Record ("AR.") 76-78). Ms. Talley asserted the disabling conditions of "congestive heart failure, HPB [high blood pressure], stomach ulcer, back problems, bladder infections, sinus infections, hiatal hernia, allergies, asthma, bronchitis." (AR. 84).

Plaintiff's application was denied initially (AR. 65-68) and upon reconsideration (AR. 71). Plaintiff subsequently requested a hearing (AR. 73) which was held on April 7, 1999, before Administrative Law Judge ("ALJ") Peter C. Edison (AR. 28). Plaintiff, her husband Alf Ray Talley, and Plaintiff's friend Camilla Garrison appeared at the hearing and testified. (AR. 31, 50, 55).

On July 26, 1999, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations ("Act"). (AR. 14-21).

On September 15, 1999, Plaintiff timely filed a request for review of the hearing

---

[3] While Plaintiff filed for both DIB and SSI, Plaintiff has since couched her claim in terms of DIB only.

decision. (AR. 9, 286-87). On July 17, 2001, the Appeals Council issued a letter declining to review Plaintiff's case (AR. 5), at which point the decision of the ALJ became the final decision of the Commissioner.

Plaintiff then filed a timely civil action in this Court seeking judicial review of the administrative decision. Talley v. Soc. Sec. Admin., No. 1:01-0096. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On November 25, 2003, Magistrate Judge Knowles recommended that Plaintiff's Motion be denied. (Doc. No. 13 at 4). Plaintiff timely objected. (Id.).

In a Memorandum Opinion entered on February 12, 2004, this Court declined to adopt Magistrate Judge Knowles' Report and remanded the case to the Social Security Administration ("SSA"). (AR. 377-84). This Court ordered the SSA to address two (2) problems on remand: (1) that the ALJ had not properly weighed the assessments provided by the treating physician and chiropractor (AR. 380-81); and (2) that the ALJ had not made a proper credibility determination with respect to the subjective testimony of the Plaintiff (AR. 383).

The Appeals Council remanded the case to the Office of Hearings and Appeals (AR. 400-01), and a second administrative hearing was then held before the same ALJ on September 27, 2004 (AR. 478). Plaintiff testified on her own behalf. (AR. 484-87). Because Plaintiff's disability insured status expired on June 30, 2002, the question before the ALJ was whether Plaintiff was disabled at any point prior to that date. (Doc. No. 24 at 3).

On December 30, 2004, the ALJ again denied Plaintiff's DIB claim, making the following findings of fact:

    1.    The claimant met the insured status requirements of the Act as of the alleged disability onset date, and continued to meet them through June 30, 2002, but not

-3-

> thereafter.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset date.
>
> 3. The claimant had "severe" impairments by the expiration of insured status, including hypertension, moderate obesity and recurrent sinus infections.
>
> 4. The claimant's impairments, considered singularly or in combination, did not meet or equal in severity any impairment set forth at 20 CFR Part 404, Subpart P, Appendix One by the expiration of insured status.
>
> 5. The claimant's subjective allegations of an onset of disabling pain and functional limitations by the expiration of insured status are not credible.
>
> 6. The claimant retained the residual functional capacity through the expiration of insured status to perform medium work not requiring concentrated exposure to irritating inhalants.
>
> 7. The past relevant work as a hospital cook was not precluded by the residual functional capacity through the expiration of insured status.
>
> 8. The claimant was not disabled within the meaning of the Act by the expiration of insured status and is, therefore, not entitled to the benefits applied for.

(AR 322).

Plaintiff filed a request for review to the Appeals Council (AR. 299-311) which was denied on March 29, 2005 (AR. 295-98).

Plaintiff then timely failed a second civil complaint. On September 29, 2006, the Magistrate Judge issued a Report recommending that the ALJ decision be affirmed and Plaintiff's DIB claim be denied. Plaintiff filed a timely Objection to the Report on October 23, 2006. (Doc. No. 27). Plaintiff raises four (4) objections to the Magistrate Judge's Report: (1) that the ALJ erred in concluding that certain of Plaintiff's ailments were not "severe"; (2) that the ALJ breached the treating physician rule; (3) that the ALJ did not have sufficient evidence to reject the testimony of Plaintiff as not credible; and (4) that the ALJ erred in concluding that

-4-

Plaintiff could return to past relevant work. (Id.).

### B. Factual Background

The Court adopts that portion of the Magistrate Judge's Report that addresses Plaintiff's medical evidence, vocational history, and the relevant testimony at both of Plaintiff's administrative hearings. (Doc. No. 18 at 4-12).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). The Court's review of the portions of the Report to which Plaintiff objects is *de novo*. 28 U.S.C. § 636(b). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision; and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

The standards of this Court's review are understood as follows. First, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (citing Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

-5-

if substantial evidence supports the Commissioner's findings and inferences. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985) (citing Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).

Second, "legal errors" requires determining whether the Commissioner applied the correct legal standard to the evaluation. See Preslar v. Sec'y of Health & Human Servs., 14 F.3d 1107, 1113 (6th Cir. 1994). Generally, the Commissioner's determination is entitled to deference by the court. See Whiteside v. Sec'y of Health & Human Servs., 834 F.2d 1289, 1292 (6th Cir. 1987); Merz v. Sec'y of Health & Human Servs., 969 F.2d 201, 203 (6th Cir. 1992); Salamackis v. Comm'r of Soc. Sec., 221 F.3d 828, 832 (6th Cir. 2000).

### III. PROCEEDINGS AT THE ADMINISTRATIVE LEVEL

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is considered to be any previous work performed by the claimant, as well as any other relevant work that exists in the national economy in significant numbers. In determining whether work exists in the national economy, the ALJ need not consider whether such work

-6-

Case 1:05-cv-00039  Document 28  Filed 06/12/08  Page 6 of 19 PageID #: 146

exists in the immediate area in which claimant lives, whether a specific job vacancy exists, or whether claimant would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

**A. Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Did Not Err in Failing to Conclude that Certain of Plaintiff's Ailments Were Not Severe.**

The ALJ determined that, of Plaintiff's alleged ailments, moderate obesity, hypertension, and recurrent sinus infections were "severe" under the meaning of the Act, whereas cardiac, urological, pulmonary, and back impairments were not severe. (AR. 320, 322). The Magistrate Judge concluded that the ALJ erred in his determination that Plaintiff's lower back ailment was not severe, but classified this mischaracterization as harmless error. (Doc. No. 24 at 20-22). Otherwise, the Magistrate Judge recommended affirming the findings of the ALJ with respect to the characterization of Plaintiff's ailments, concluding that the ALJ used the correct legal standard and made findings supported by sufficient evidence. (Doc. No. 24 at 18-20).

Plaintiff's objection takes aim primarily at the legal standard employed by the ALJ. In finding certain of Plaintiff's ailments not severe, the ALJ relied on the conclusion that said ailments were "not shown to have significantly impacted functioning." (AR. 320). The Magistrate Judge affirmed the standard employed by the ALJ, citing SSA regulations for the proposition that, "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). (Doc. No. 24 at 19).

Plaintiff argues that both the Magistrate Judge and the ALJ relied on too exacting a standard, and that the binding Sixth Circuit definition of "non-severe" is the more lenient "would have no more than a minimal effect on plaintiff's ability to work.." Salyers v. Sec'y of Health & Human Servs., 798 F.2d 897, 901 (6th Cir. 1986). (Doc. No. 27 at 6). The crux of Plaintiff's argument is that there is a logical gap between the Sixth Circuit and SSA definitions of non-severe such that an impairment could have more than a *minimal* effect on the ability to work, and

-8-

so be severe under Sixth Circuit law, but not have a *significant* effect on the ability to work, and so be non-severe under SSA regulations. (Id.). While Plaintiff's claimed distinction makes a degree of intuitive sense, it is legal error. The Sixth Circuit understands the word "significant" in SSA regulations to mean "having or likely to influence or effect: deserving to be considered", and so treats the SSA standard for non-severe as harmonious with its own. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 90 n.2 (6th Cir. 1986).

Accordingly, this Court adopts the Magistrate Judge's position that the ALJ used the correct legal standard in determining which of Plaintiff's ailments were non-severe.

### 1. *Plaintiff's Cardiac, Urological, and Pulmonary Impairments*

The Court adopts that portion of the Magistrate Judge's Report which affirms the ALJ's determination that Plaintiff's cardiac, urological, and pulmonary impairments were non-severe. While Plaintiff sought medical attention for these impairments on numerous occasions, particularly for cardiac and urological problems, there is sufficient evidence in the record to support the ALJ's finding that such impairments were sporadic and resolving, and so would not significantly impact Plaintiff's exertional abilities. (AR. 319-20).

### 2. *Plaintiff's Lower Back Impairments*

The Magistrate Judge concluded that the ALJ erred in failing to find Plaintiff's lower back impairments severe. (Doc. No. 24 at 20-21). Plaintiff underwent magnetic resonance imaging ("MRI") of her lower back on August 29, 2002, which revealed "moderate left neuroforaminal stenosis" at the L5-S1 interspace. (AR. 430-31). As the ALJ noted, "the progressive nature of facet degeneration, which was 'advanced' as of August 2002, should have led the ALJ to find a medically determinable back impairment" which was severe during the

-9-

period that Plaintiff was insured. (Doc. No. 24 at 20). For this reason, the Court is in agreement that the ALJ erred in finding Plaintiff's lower back impairment non-severe and adopts the corresponding portion of the Magistrate Judge's Report.

However, the Magistrate Judge deemed the ALJ determination of non-severity with respect to Plaintiff's lower back to be harmless error because,

> the ALJ did account for some reduction in plaintiff's exertional abilities, relying on the state agency physicians' assessments which accorded partial credibility to plaintiff's pain complaints in concluding that she was restricted to medium work activities.

(Doc. No. 24 at 21).

The Court disagrees with the Magistrate Judge's conclusion of harmless error. Nowhere in the ALJ's decision is there any accounting for either Plaintiff's lower back ailment or associated pain. While the Magistrate Judge concluded that the ALJ "accorded partial credibility to Plaintiff's pain complaints," the ALJ's decision itself runs precisely to the contrary: the ALJ found that, "[t]he claimant's subjective allegations of an onset of disabling pain and functional limitations by the expiration of insured status are not credible." (AR. 322). The Magistrate Judge apparently meant that, by "relying on the state agency physicians' assessments which accorded partial credibility to plaintiff's pain complaints," the ALJ incorporated such consideration of Plaintiff's pain into his decision, despite the ALJ's express language to the contrary. Such tenuous, indirect accounting of Plaintiff's severe lower back impairment is insufficient.

The law of this circuit holds that "[d]isability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result." Mowery v. Heckler,

-10-

771 F.2d 966, 971 (6th Cir. 1985); see also Hurst v. Schweiker, 725 F.2d 53, 55-56 (6th Cir. 1984); Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). It is thus imperative to a determination of disability that all of a claimant's impairments be given due consideration. Plaintiff's lower back ailment may necessitate a finding of disability, either in and of itself, or in combination with Plaintiff's other impairments. As a result, the ALJ's determination of no disability is undermined to the extent that Plaintiff's severe lower back impairment did not inform the ALJ's decision. Remand is therefore appropriate for the ALJ to reach a conclusion which incorporates all of Plaintiff's severe impairments.

> **B.** **Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Did Not Err in Failing to Give Appropriate Deference to the Opinion of Treating Medical Sources.**
>
>     **1.** *Dr. Joel Hensley*

Plaintiff has argued strenuously that Dr. Hensley's assessment is entitled to deference under the treating physician rule, citing, among other cases, Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The treating physician rule is codified at 20 C.F.R.§ 404.1527(d)(2), which states that

> [the Social Security Administration] give[s] more weight to
> opinions from your treating sources, since these sources are likely
> to be the medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and may bring
> a unique perspective to the medical evidence.

Of course, the treating physician rule is not absolute; an ALJ may reject the opinion of a treating physician and assign it no weight for good cause shown, Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987); Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985). What is essential is that whatever the weight assigned to a treating physician opinion, it must be supported by "good

-11-

reasons." 20 C.F.R.§ 404.1527(d)(2).

Dr. Hensley was Plaintiff's treating physician from 1991 to 1998. During that time, Dr. Hensley saw Plaintiff no less than 50 times (AR. 202-53) with regard to a variety of complaints, including sinus infection (AR. 204, 208-09, 214, 216, 218), hypertension and related dizziness (AR. 206, 208-09, 211, 218, 234), gastrointestinal discomfort (AR. 210, 213, 216, 218), chest pain and related cardiac issues (AR. 227, 235, 247), pulmonary discomfort (AR. 233-34), and urological problems (AR. 207, 233). Dr. Hensley completed an assessment of Plaintiff for purposes of Plaintiff's DIB claim indicating that Plaintiff could sit for eight (8) hours per workday, stand or walk for two (2) hours each, and lift up to 20 pounds frequently. (AR. 280).

The ALJ accorded no weight to Dr. Hensley's opinion, citing three (3) reasons: (1) that Dr. Hensley's opinion was inconsistent with his own treatment notes; (2) that Dr. Hensley failed to indicate environmental limitations on Plaintiff's ability to work in spite of evidence of recurrent sinus infections; and (3) that records from the subsequent treating source, Dr. Mark Landis, suggest that Plaintiff was in good health. (AR. 321). The Magistrate Judge concluded in his Report that the ALJ's decision with regard to Dr. Hensley was supported by sufficient evidence. (Doc. No. 24 at 25).

The Court finds that the ALJ's reasons for discounting the opinion of Dr. Hensley are not sustainable. There is insufficient evidence to consider Dr. Hensley's assessment of Plaintiff's capabilities inconsistent with his treatment notes. The ALJ found that Dr. Hensley's notes pointed most significantly towards recurrent sinus infections, and so could not support the exertional limitations which Dr. Hensley opined in his assessment. (AR. 321). However, the ALJ's reading of Dr. Henley's notes is incomplete. Dr. Henley saw Plaintiff at least 50 times

-12-

over an eight (8) year period, during which Dr. Hensley made note of Plaintiff's frequent complaints of multiple ailments of varying severity. Moreover, Dr. Hensley notes were not the only objective source from which his assessment could reasonably have been drawn. Dr. Hensley was also in communication with specialists whom Plaintiff consulted for urological (AR. 158-60) and cardiac and hypertensive (AR. 134-55, 162-73) impairments. In addition, Dr. Hensley was aware of the numerous medications which Plaintiff was taking for cardiac, hypertensive, gastrointestinal, urological, pulmonary, sinus, and back impairments, as well as low-level painkillers for associated discomfort. (AR. 202-53). The Court thus deems entirely plausible Dr. Hensley's assessment of Plaintiff as a reflection of his experience and expertise with regard to Plaintiff's impairments and finds insufficient evidence to support the ALJ's decision that Dr. Hensley's assessment was inconsistent with the record evidence.

The ALJ also cited Dr. Hensley's failure to list environmental limitations on Plaintiff's ability to work as a reason for assigning Dr. Hensley's assessment no weight. (AR. 321). While there seems a logical connection between Plaintiff's well-documented sinusitis and a precaution against employment in an environment containing certain inhalants, this Court does not have the medical expertise to say that recurrent sinus infections always necessitate an assessment of environmental limitations. However, even if such a necessary limitation existed, there is insufficient evidence in the record to conclude that this shortcoming of Dr. Hensley's assessment was not mere oversight, but instead warrants the wholesale discrediting of his opinion.

The ALJ also cited as a basis for assigning no weight to Dr. Hensley's assessment the fact that Dr. Mark Landis, Plaintiff's subsequent treating physician, made notations suggesting that Plaintiff was in good health. Specifically, the ALJ points to the fact that Dr. Landis once

-13-

described a consultation with Plaintiff as a "well woman exam" and noted that she had "[no] problems today." (AR. 321). A "well-woman exam" is generally understood in the medical community to refer to a gynecological and breast examination. See, e.g., http://www.vpul.upenn.edu/shs/wellwoman.html; http://www.bcm.edu/crowd/?pmid=1467. In fact, on the record page which contains the nurse's inscription "well woman exam," Dr. Landis' notes detail breast and pelvic exams. (AR. 470). The fact that Dr. Landis wrote "[no] problems today" should thus be given no weight in this case, because Plaintiff never alleged breast or pelvic impairments. However, even had Dr. Landis' note pertained to any of Plaintiff's alleged impairments, the ALJ read too much into this singular inscription. The existence of severe, limiting impairments and days of good health are not mutually exclusive.

In addition, the ALJ inaccurately represents Plaintiff's health as notated by Dr. Landis. Dr. Landis' notes chronicling approximately 43 examinations of Plaintiff over a two (2) year period make repeated reference to Plaintiff's complaints of recurrent impairments and associated pain. (AR. 432-74).

The treating physician rule was not a factor in the ALJ's decision because the ALJ assigned Dr. Hensley's assessment no weight. However, because insufficient evidence exists to support the ALJ's assignment of no weight to the assessment of Dr. Hensley, remand is proper for the ALJ to recalibrate the sum total of physician assessments, taking into account the treating physician rule's mandate.

### 2. *Dr. Ronald Graves*

The Court adopts that portion of the Magistrate Judge's Report which concludes that the ALJ's decision to accord Dr. Graves' assessment no weight was supported by sufficient

-14-

evidence.  Chiropractors are not "acceptable medical sources" capable of establishing a medical impairment under the Act but are instead "other sources" that may attest to the severity of an ailment.  20 C.F.R. § 404.1513.  As a result, "the ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530 (6th Cir. 1997).  The ALJ assigned Dr. Graves' assessment of Plaintiff no weight because Dr. Graves' treatment notes did not support the highly restrictive exertional limitation which he opined.  (AR. 319).  There is sufficient evidence in the record to support the ALJ's decision in this regard: Dr. Graves's notes reference sporadic instances of headaches and back pain which improved after short courses of treatment.  (AR. 177-81).  Moreover, the ALJ was within his authority to disregard Dr. Graves' finding of "L4 Grade 1 spondylolisthesis", sciatica, and "loss of C curve" because a chiropractor is not capable of establishing such conditions under the Act.  (Doc. No. 24 at 26).

### C. Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Did Not Err in Rejecting the Testimony of the Plaintiff as Not Credible.

The ALJ found Plaintiff's subjective allegations of pain and functional limitations to be not credible for three (3) reasons: (1) that, with regard to Plaintiff's daily activities, she was "essentially doing what she wanted to within the context of her household requirements"; (2) that Plaintiff withheld certain information concerning her daily activities, specifically that she was, at one point, caring for a woman who had suffered a stroke; and (3) that Plaintiff's allegations were not otherwise supported by objective medical evidence.  (AR. 317).  The Magistrate Judge concluded that the ALJ's decision on this matter was supported by sufficient evidence in the record.  The Court disagrees.

-15-

With respect to the ALJ's first reason for considering Plaintiff's testimony not credible, the administrative record does not support the ALJ's finding that Plaintiff was "doing what she wanted" in her daily activities. To the contrary, Plaintiff testified that she was generally restricted to the lighter aspects of home maintenance. For example, Plaintiff asserted that she was occasionally unable to prepare breakfast as was her usual practice (AR. 45), and that she was able to do some dusting and sweeping, but not vacuuming or yard work (AR. 46). Plaintiff testified that she was not able to do some of the gardening that she had been capable of a year prior to the hearing, and more generally, that her ailments had progressively forced her into an isolated, sedentary lifestyle, in which she was unable to attend church, a salon in town, or visit with friends or family as was her previous custom; instead, Plaintiff stated that she spent most of her time sitting, reading the Bible, mending clothes, or doing crossword puzzles at home. (AR. 47-49). Plaintiff's testimony thus contradicts the ALJ's finding that she spoke to being substantially unimpeded in her preferred daily activities.

The ALJ also cited a sentence fragment in a letter from Plaintiff's consulting cardiologist Dr. R. T. Hammons to treating physician Dr. Hensley as a reason for concluding that Plaintiff's testimony was not credible. (AR. 317). In the letter, Dr. Hammons wrote of Plaintiff that "she is also taking care of a lady who had a stroke." (AR. 162). The ALJ found that, because Plaintiff did not disclose this information in her testimony, her testimony was not credible.

The Court finds that this sentence fragment, standing alone, provides insufficient evidence to challenge Plaintiff's credibility. In the larger context in which the fragment is found, Dr. Hammons wrote of Plaintiff, "[s]he unfortunately is going through a stressful time right now. She has had several family member [*sic*] die and she is also taking care of a lady who had a

-16-

Case 1:05-cv-00039 Document 28 Filed 06/12/08 Page 16 of 19 PageID #: 156

stroke." (AR. 162). In this context, the only thing that can be derived of Plaintiff's care-taking is that Dr. Hammons determined it to be emotionally taxing; nothing is deducible with regards to the physical strain which this development placed on Plaintiff. As Plaintiff argues,

> [t]here is no explanation in the record to follow up on Dr. Hammons' offhanded comment and it is impossible to know what 'taking care' means; it could mean that a lady was visiting with the Talleys while she recovered from a stroke or it could mean, as the Administrative Law Judge seemed to suggest, that she was running a nursing home and performing Herculean physical feats for an incapacitated neighbor.

(Doc. No. 13 at 26, n.12). Since it cannot be determined from the record whether Plaintiff's care-taking entailed any significant exertion, to call its omission from Plaintiff's testimony significant is the sort of speculation which must presuppose Plaintiff's questionable credibility. The Court finds that Dr. Hammons' notation concerning Plaintiff's care-taking is the very definition of a "mere scintilla" and so, cannot be considered sufficient evidence to support the ALJ's finding that Plaintiff's testimony was not credible. Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (citing Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The ALJ also found that Plaintiff's testimony was not supported by objective evidence in the record. As discussed above, the record is replete with evidence of Plaintiff's repeated visits to numerous medical practitioners, many of which contain notations either substantiating or detailing Plaintiff's complaints of pain. (AR. 134-81, 415-77).

For these reasons, the ALJ's determination that Plaintiff's subjective complaints of pain were not credible is not supported by substantial evidence. Remand is proper for the ALJ to reassess Plaintiff's credibility and testimony.

-17-

**D. Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Did Not Err in Concluding that Plaintiff Could Return to Past Relevant Work.**

Plaintiff has argued that the ALJ erred both in miscategorizing Plaintiff's past relevant work as of a medium exertional level, and in finding that Plaintiff could return to that work. (Doc. No. 27 at 13-14).

Plaintiff argues that her past relevant work was wrongly classified by the ALJ as "hospital cook" and that Plaintiff in fact did much more than just cook, because she "washed pots and dishes, set up trays, and did general kitchen activities." (Doc. No. 13 at 28). However, Plaintiff's argument does not establish that the classification of her past relevant work as of a medium exertional level was inaccurate. Plaintiff testified that in her past relevant work, she was occasionally, but not every day, required to lift as much as 50 pounds (AR. 482), and that she was frequently required to lift items weighing up to 25 pounds (AR. 95). The ALJ relied on this testimony as well as the reports of two agency vocational specialists in reaching his decision that Plaintiff's past relevant work was of the medium exertional level. (AR. 316). The Magistrate Judge concluded that the ALJ based his classification of Plaintiff's past relevant work as of a medium exertional level on sufficient evidence (Doc. No. 24 at 29-31), and this Court is in agreement.

However, the Court rejects the Magistrate Judge's conclusion that the ALJ did not err in finding that Plaintiff could return to past relevant work in light of the ALJ's failure to base certain logically antecedent conclusions on sufficient evidence in the record, as detailed above.

-18-

## V.  CONCLUSION

The Court finds that the ALJ failed to base his decision that Plaintiff is disabled under the Act on sufficient evidence such that a remand is necessary.  Upon remand, the ALJ shall: (1) reconsider the severity of Plaintiff's lower back ailment; (2) attribute the proper weight to the assessment of Dr. Hensley and show the associated deference to that assessment due under the treating physician rule; and (3) reassess Plaintiff's testimony and credibility.

For the reasons stated above, this Court **GRANTS** Plaintiff's Motion for Judgment on the Administrative Record, **REVERSES** the decision of the Commissioner, and **REMANDS** for further proceedings consistent with this Order.

It is so ORDERED.

Entered this the ____12th_____ day of June, 2008.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT